IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHIRLEE P. WEEDMAN-HARDESTY                    CV 07-6196-MA

       Plaintiff,                          OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

       Defendant.

KATHRYN TASSINARI
BRENT WELLS
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
(541)686-1969

       Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158

1 - OPINION AND ORDER

TERRYE E. SHEA
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2143

      Attorneys for Defendant

MARSH, Judge.

     Plaintiff Shirlee Weedman-Hardesty seeks judicial review of
the final decision of the Commissioner denying her February 21,
2002, application for disability insurance benefits under Title
II of the Social Security Act, 42 U.S.C. §§ 401-433.

     On the date of the Commissioner's final decision, plaintiff
was 53 years old.  She alleges she has been disabled since
February 28, 2001, based on a combination of impairments,
including post-traumatic stress disorder (PTSD), dysthymia, and
rheumatoid arthritis.  Plaintiff's disability claim was denied
initially and on reconsideration.  The Administrative Law Judge
(ALJ) held a hearing on September 8, 2004, and issued a decision
that plaintiff was not disabled.  Plaintiff appealed the decision
to the Appeals Council, which, on August 10, 2005, vacated the
ALJ's decision and remanded the matter for further proceedings.
After completing the tasks required by the Remand Order, the ALJ
held additional hearings on September 10 and September 20, 2006,
and on March 3, 2007, issued a decision again finding plaintiff
was not disabled.  On June 25, 2007, the Appeals Council denied

plaintiff's request for further review.  The ALJ's March 3, 2007,
decision, therefore, became the final decision of the
Commissioner for purposes of judicial review.

Plaintiff seeks an Order from this court reversing the
Commissioner's decision and remanding the case for an award of
benefits.  For the following reasons, the court **REVERSES** the
final decision of the Commissioner and **REMANDS** this case for an
immediate award of benefits.

### THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled.  Bowen v.
Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 404.1520.
Plaintiff bears the burden of proof at Steps One through Four.
See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each
step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in
substantial gainful activity since the alleged onset of her
disability.

At Step Two, the ALJ found plaintiff suffers from PTSD,
dysthymia, and arthritis, which are severe impairments under 20
C.F.R. §§404.1520(c)(an impairment or combination of impairments
is severe if it significantly limits an individual's physical or
mental ability to do basic work activities).

At Step Three, the ALJ found these impairments do not meet or equal a listed impairment.  The ALJ found plaintiff has the residual functional capacity to perform medium work that does not require close interaction with the general public, close interaction and teamwork with co-workers, frequent changes in work locations, or work in poorly lit locations.

At Step Four, the ALJ found plaintiff is able to perform her past relevant work as a mail clerk and, therefore, the ALJ did not need to make a Step Five finding regarding other work.

Consistent with the above findings, the ALJ found plaintiff was not under a disability and denied her claim for benefits.

## ISSUES ON REVIEW

Plaintiff contends the Commissioner's final decision should be reversed because the ALJ erred (1) in rejecting plaintiff's evidence regarding the precipitating cause(s) and severity of her PTSD and dysthymia diagnoses based on lack of credibility, and (2) in rejecting the medical opinions of plaintiff's physicians regarding the extent of plaintiff's limitations arising from her diagnoses of PTSD and dysthymia.

## LEGAL STANDARDS

**Burden of Proof**.

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182

4 - OPINION AND ORDER

(9th Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1122 (1996).  To meet
this burden, the claimant must demonstrate the inability "to
engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which . . .
has lasted or can be expected to last for a continuous period of
not less than 12 months."  42 U.S.C § 423(d)(1)(A).

   The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  "Substantial evidence means more than a mere
scintilla but less than a preponderance; it is such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir.
1995).

   The court must weigh all of the evidence whether it supports
or detracts from the Commissioner's decision.  <u>Martinez v.
Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's
decision must be upheld, however, even if the "evidence is
susceptible to more than one rational interpretation." <u>Andrews</u>,
53 F.3d at 1039-40.

   The Commissioner bears the burden of developing the record.
<u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991).  The duty
to further develop the record, however is triggered only when
there is ambiguous evidence or when the record is inadequate to

5 - OPINION AND ORDER

allow for proper evaluation of the evidence.  <u>Mayes v. Massanari</u>,
276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or
for immediate payment of benefits is within the discretion of the
court.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir.), <u>cert</u>.
<u>denied</u>, 121 S. Ct. 628 (2000).  "If additional proceedings can
remedy defects in the original administrative proceeding, a
social security case should be remanded."  <u>Lewin v. Schweiker</u>,
654 F.2d 631, 635 (9th Cir. 1981).

<u>**DISCUSSION**</u>

At the heart of this case are plaintiff's allegations that
while she was serving in the Army at Fort Benjamin Harris in the
late 1970s, she witnessed a female soldier being gang raped and
later learned that soldier was murdered.  She was threatened with
harm if she reported what she had seen.  She alleges she was also
a rape victim and suffered from a pattern of sexual harassment
that was pervasive at that duty station.  She is unsure of the
details of the assault on her because she blacked out.

In January 1998, the Department of Veterans Affairs (VA)
found plaintiff was temporarily 30% disabled as of April 1990 as
a result of service connected PTSD, which increased to 50%
disability effective November 1996.  In September 2002, the VA
raised the disability rating to 100%.  Plaintiff remains on
temporary total disability with the VA.

6 - OPINION AND ORDER

## RELEVANT RECORD

Plaintiff's disability claim includes an allegation that she suffers from arthritis.  The Commissioner and plaintiff focus on plaintiff's claim that she is unable to work because of PTSD and dysthymia.  The court, therefore, limits its discussion to the evidence regarding PTSD and dysthymia.

### Plaintiff's Hearing Testimony.

Plaintiff has a bachelor's degree in Agriculture.  She served as a payroll clerk in the United States Army from 1975-1978 and received an honorable discharge.  Thereafter, she worked as a mail clerk for the Oregon Department of Motor Vehicles and later as a receptionist at Oregon State University until February 2002.  Her job ended at OSU when, on the advice of her doctor, she did not return to work after taking leave under the Family Medical Leave Act.

Plaintiff's daily activities during the period of her alleged disability have included raising calves, caring for her ill mother, and selling firewood.  She plays piano to "take the edge off."  It has a "calming effect" that "helps [her] survive." Plaintiff has difficulty sleeping, and often has nightmares and flashbacks.

Although the ALJ rejected plaintiff's disability claim in large part because of her perceived lack of credibility in recreating and describing alleged sexual crimes that occurred

while she was on active military duty, the ALJ did not
substantially delve into or test plaintiff's recollection of
those alleged events in any of the hearings.

**VA's Disability Determinations.**

In a "Review Officer Decision" dated January 15, 1998, the
VA found plaintiff suffered from PTSD with dysthymia directly
related to her active military service.  The supporting
documentation, in addition to her military service records,
included numerous VA examination reports, medical and
psychological reports, and vocational rehabilitation records
compiled from June 1990 until February 1996.  The VA rated
plaintiff's disability at 30% effective April 30, 1990, and 50%
effective November 7, 1996.  As of the latter date, the VA
concluded plaintiff's PTSD and dysthymia symptoms were "mild to
moderately disabling."  On September 19, 2002, the VA issued a
decision increasing plaintiff's disability benefit to 100%
because her PTSD "service connected condition has worsened."
The VA made this decision based in part on medical records from
Family Medicine Practitioner Shawn J. Foley, M.D., dating from
October 1979 to the date of the decision, counseling records from
Licensed Professional Counselor Sue Armstrong, Ph.D., beginning
in July 1992, and VA examinations and medical records from the
Salem and Portland VA Medical Centers that include reports from
Psychiatrist Ashley Horacek, M.D., in 1995, Psychologist Wendy

8 - OPINION AND ORDER

Comstock, Ph.D., in 1997, and Psychologist Gary P. Monkarsh, Ph.D., in August 2002.

In these and other VA examination reports, plaintiff variously described the events that allegedly occurred while she was on active duty at Fort Benjamin Harrison that led to her disabling PTSD.  In January 1998, the VA summarized plaintiff's description of events as follows:

> The veteran's service medical records do not document any treatment for psychiatric problems during active military service.  At separation the veteran reported a history of depression.
>
> A June 1980 VA examination report states that the veteran reported that [she] was raped during military service.  She reported having sporadic nightmares and saw others assaulted and raped. . . .
>
> A May 1992 VA examination report states that the veteran reported that witnessed [sic] rapes and harassment during military service. She reported having sporadic nightmares, flashbacks, and intrusive memories of her military experiences. . . .
>
> * * * *
>
> An August 1997 VA examination report states that the veteran reported that she was harassed during service and witnessed rapes, assaults, a murder, and a suicide.  She apparently is not certain that she was raped, but believed she was.  She reported that she was harassed during service. . . .
>
> Lay statements have been received from two fellow servicemen.  They do not confirm the specific stressors identified by the veteran of rape, assault, murder and suicide, but

they do attest to general sexual harassment
involving women with whom they worked.  They
also attest to the veteran's expression of
fear and anxiety during her active service.

The specific stressors identified by the
veteran have not been verified.  Several
attempts have been made to confirm the
alleged rapes, murder, and suicide of others
with who the veteran served, all
unsuccessful,  It is considered unlikely
that, had such events actually occurred to
the extent the veteran reports, there would
be no recoverable record of them.  It appears
extremely unlikely that the rape and murder
of a female soldier, as reported by the
veteran, would have gone unreported and
uninvestigated, as alleged by the veteran.

However, lay statements which have been
received attest to the veteran's expressed
fear and anxiety of others during service and
the general atmosphere of sexual harassment
which was present.  Furthermore, the veteran
reported at separation a history of
depression.  Resolving all reasonable doubt
in favor of the veteran, service connection
is granted.

AR at 72-73.

**The Relevant Medical Records.**

For purposes of this case, the relevant medical records are
those relating to plaintiff's claim that she is unable to work
because of service-related PTSD and dysthymia.

**Treating Physicians/Psychologists.**

Sue Armstrong, Ph.D.- Licensed Professional Counselor.

Dr. Armstrong, a specialist in anxiety disorders, began
seeing plaintiff in June 1992, at the request of a VA physician

10- OPINION AND ORDER

who, in referring plaintiff, described her as suffering from a "serious level of psychological problems."  More than half of Dr. Armstrong's patients were veterans with clinically diagnosable PTSD.

In her first meeting, plaintiff described the traumatic events she underwent and witnessed while serving in the military. Dr. Armstrong gave plaintiff a test for rape trauma syndrome. Based on the results of the test, Dr. Armstrong opined that plaintiff suffered from post-traumatic stress disorder, rape trauma syndrome, and "a depression component associated with PTSD, all due to abnormal traumatic events directly related to her military service."

In November 1995, Dr. Armstrong wrote a letter addressing plaintiff's VA claim.  She stated she has witnessed how plaintiff "is still unable to do relationships adequately, although she has made some progress from the very shy, timid, fearful woman I first saw in therapy."  She questioned whether plaintiff would be able to hold onto a job and would "only be able to handle a part-time job" because "she is a loner, unable to 'do' people long enough to work with them all day."  She noted that before her military service, plaintiff's history was of a "social, likable, affable, popular, energetic individual."  Dr. Armstrong estimated plaintiff's PTSD level was 50%-60%.

11- OPINION AND ORDER

Shawn Foley, M.D. - Family Practitioner.

In January 2001, Dr. Foley first examined plaintiff. She brought with her VA records that reflected she was diagnosed with service-related PTSD arising from "sexual assaults and maybe even some rapes" that did not seem to be "totally confirmed."  Dr. Foley noted plaintiff was a little sad and tearful at times and had a "slightly flat effect" with decreased eye contact.  His initial assessment was depression, anxiety, and PTSD.  Dr. Foley prescribed Paxil.

In February 2001, on a follow-up examination, plaintiff's eye contact was still somewhat decreased and her affect was "definitely flat."  Dr. Foley completed paperwork placing her on short-term disability for 13 weeks.  In followup visits, plaintiff's effect continued to be flat, and she was nauseous when she took the Paxil medication.  Dr. Foley prescribed Celexa.

In May 2001, in response to an insurance company's disability questionnaire, Dr. Foley expressed reservations regarding plaintiff's ability to return to work in light of her outbursts, although he would defer to a psychiatrist's opinion regarding that issue.

Dr. Foley's chart notes reflect that he continued to treat plaintiff for a variety of physical ailments over the next 30 months and repeatedly assessed plaintiff as suffering from PTSD and/or depression.

<u>Charles Kuttner, M.D. - Psychiatrist</u>.

In April 2001, Dr. Armstrong referred plaintiff to Dr. Kuttner, a VA psychiatrist.  Dr. Kuttner's initial diagnosis was PTSD based on her report of significant trauma in the military. Dr. Kuttner noted her mood was "superficially good, but with underlying depression and tension, more marked as we discussed trauma issues."  On examination, Dr. Kuttner assigned plaintiff with a GAF score of 48 (serious symptoms or any serious impairment in social, occupational, or school functioning).  He further opined that plaintiff had a moderate to severe behavioral impairment.  He also noted that malingering was "not known to be a factor."

Dr. Kuttner continued to treat plaintiff through at least September 2003, with an ongoing diagnosis of PTSD and depression.

<u>Peg Elliott Mayo, LCSW</u>.

In January 2004, Dr. Kuttner referred plaintiff to Ms. Mayo for further counseling.  She saw plaintiff on two occasions.  In April 2004, in connection with the pending disability claim, Ms. Mayo reported that plaintiff presented with a "typical PTSD" diagnosis with several triggers that send her into "immobilized panic or great rage."  She opined plaintiff was not employable at the time.

**Examining Physicians/Psychologists.**

Laurie Moore, M.D. - Psychiatrist.

In May and July 1992, Dr. Moore examined plaintiff in connection with her VA disability claim.  Plaintiff described her military and post-military history, including the history of sexual harassment and assaults while she was in the service. Dr. Moore diagnosed chronic post-traumatic stress disorder and dysthymia, related to her military experiences.  She states that plaintiff "has obviously spent a great deal of time trying to piece herself together and make sense of what it is that has occurred to her."  Plaintiff "seemed to be more angry at herself that she was powerless and couldn't do anything to change her situation."

Ashley Horacek, M.D. - Psychiatrist.

Dr. Horacek examined plaintiff in connection with her VA disability claim in November 1995.  Plaintiff again repeated a version of the sexual assaults/rapes she witnessed and/or endured while in the service.  Dr. Horacek assigned a GAF score of 70 (mild symptoms and some difficulty in social and occupational functioning) and opined plaintiff suffered from mild PTSD and dysthymia which "did not start in the service" and was, at that time, more related to her divorce and father's death.

<u>Wendy Comstock, M.D. - Psychiatrist</u>.

Dr. Comstock examined plaintiff in connection with her VA disability claim in August 1997.  As in previous VA examinations, plaintiff recited her military experience.  Dr. Comstock reviewed the earlier examination reports and diagnosed moderate PTSD, with a GAF score of 65 (mild symptoms and some difficulty in social and occupational functioning).

<u>Gary P. Monkarsh, Ph.D. - Psychologist</u>.

In August 2002, Dr. Monkarsh examined plaintiff in connection with her VA disability status and reviewed voluminous medical reports.  He opined plaintiff "appears to meet the DSM-IV criteria for chronic, severe  [PTSD], and dysthymic disorder secondary to [PTSD].  The veteran suffers from severe social, industrial, and emotional impairment when not taking psychotropic medication.  The impairment is somewhat moderated when she takes her medication."  Nevertheless, Dr. Monkarsh plaintiff was "at least temporarily unemployable."

<u>Mark Wagener, Ph.D. - Psychologist</u>.

In October 2005 and March 2006, Dr. Wagener reviewed plaintiff's medical records and, at the request of the Commissioner, administered psychological testing in connection with plaintiff's pending disability claim.

In October 2005, plaintiff's performance on the Wechsler

Adult Intelligence Scale III and Memory Scale III testing, as well as other tests produced valid results.  Dr. Wagener noted plaintiff was cooperative, candid, and thorough in her response to his questions, and she did not appear to exaggerate symptoms.  He diagnosed PTSD and Learning Disorder NOS.  He concluded his results were consistent with her allegations.

In March 2006, Dr. Wagener again performed a mental status examination, reviewed medical records, and administered an MMPI-2.  The validity scales on the MMPI-2 showed some inconsistency in responses most likely resulting from fatigue towards the end of the testing.  The validity scores on other scales were well within normal range and indicated a person who experiences "marked emotional disruption [with] a sense of alienation from others and high interpersonal anxiety is likely."  Once again, Dr. Wagener concluded the results of the evaluation were consistent with plaintiff's allegations.

Dr. Wagener opined plaintiff had slight difficulties understanding, remembering, and carrying out detailed instructions, and interacting appropriately with the public, moderate difficulty interacting with supervisors, and marked difficulty interacting appropriately with co-workers, responding appropriately to work pressure in a usual work setting, and responding appropriately to changes in a routine work setting.

**Consulting Physicians/Psychologists.**

The following physicians/psychologists reviewed plaintiff's medical records and/or listened to her testimony and offered disability opinions to the Commissioner.

John Crossen, Ph.D. - Licensed Clinical Psychologist.

Dr. Crossen was present at the second of the three evidentiary hearings in this case.  He heard testimony from plaintiff and then responded to questions from the ALJ.  As a predicate to her questioning, the ALJ summarized her concern regarding the differing versions given by plaintiff of the alleged sexual assaults and her opinion as to the "unestablished" assumption by VA medical examiners that plaintiff had been raped while she was in the service.  Dr. Crossen agreed that the health care providers appeared to assume the accuracy of plaintiff's history.  Dr. Crossen, however, also stated that "it seems some harassment occurred," but that it was a "matter of conjecture" whether it was severe enough to result in PTSD.  He noted no clinician suggested plaintiff was "fantasizing or fabricating" but "they're saying 'Boy, I wonder about this.'"  Dr. Crossen, however, acknowledged that the clinicians agreed that plaintiff has PTSD, and that the diagnosis of dysthymia is more firmly established.

Dr. Crossen suggested Dr. Wagener's initial diagnostic testing did not clear up whether plaintiff was overstating her

17- OPINION AND ORDER

symptoms and it was he who recommended the second testing that
was ultimately performed.  Dr. Crossen never had the opportunity
to comment on Dr. Wagener's opinion following the second round of
testing that the results were consistent with plaintiff's
allegations.

     <u>Karen Bates-Smith, Ph.D. - Psychologist</u>.
     <u>Paul Rethinger, Ph.D. - Psychologist</u>.
     <u>Robert D. Henry, Ph.D. - Psychologist</u>.

     Dr. Bates-Smith reviewed plaintiff's medical records and
concluded plaintiff is moderately limited in her ability to work
in close proximity to others without being distracted, in
interacting appropriately with members of the public, in
accepting instructions and responding appropriately to criticism,
and in getting along with co-workers without distracting them or
exhibiting behavioral extremes.  Dr. Bates-Smith concluded that
plaintiff suffers from PTSD "that does not meet specific
diagnostic criteria."  She noted plaintiff's complaints are
consistent.  She also opined, however, that plaintiff is "a very
hard-working individual" based on her activities of daily living,
and her degree of social contact in light of those activities.
Accordingly, Dr. Bates-Smith discounted the low GAF scores and
concluded plaintiff was able to work in an appropriate setting
subject to her limitations.  Dr. Rethinger and Dr. Henry
concurred in this evaluation.

18 - OPINION AND ORDER

## ANALYSIS

### Rejection of Plaintiff's Testimony.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" (the Cotton test). Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)). See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986). A claimant need not produce objective medical evidence of the symptoms or their severity. Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If a claimant produces objective evidence that underlying impairments could cause the pain she complains of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her symptoms. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283. To determine whether plaintiff's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately

19- OPINION AND ORDER

explained failure to seek treatment or to follow a prescribed

course of treatment; and (3) the claimant's daily activities.

Id. at 1284 (citations omitted).

Here, the Commissioner asserts the ALJ adequately evaluated

plaintiff's credibility and gave clear and convincing reasons

for finding it wanting.  I disagree.

The ALJ rejected plaintiff's testimony regarding the

severity of her PTSD symptoms based on her finding that plaintiff

was not credible regarding her recall of the alleged sexual

assaults and harassment while she was in the service, and also

because plaintiff retained the ability to engage in daily living

activities such as tending to her ranch activities, taking care

of children, playing a musical instrument, and working out at the

gym.

There is no evidence plaintiff is a malingerer.  To the

contrary, Dr. Wagener's psychological testing affirmatively

established that plaintiff was not exaggerating her symptoms

and they were consistent with her personal history.  Dr. Crossen,

who testified at one of the hearings at the ALJ's request, agrees

there is no substantial dispute that plaintiff suffers from PTSD.

Nor is there is any substantial dispute, other than from the ALJ,

that the source of the PTSD is plaintiff's experience in the

military.  I find the ALJ's assumption that plaintiff's somewhat

differing versions of the sexual assaults she witnessed long
after they occurred makes them unbelievable is unwarranted.  The
record is clear that plaintiff and others similarly situated were
subjected to sexual harassment in the service.  The record
supports plaintiff's claim that she was fearful and anxious
during her tour of duty.  Not one VA examiner or medical
practitioner charged with the responsibility of determining
plaintiff's VA disability claim suggested that plaintiff was not
telling the truth as she understood it at the time even though
they were well aware of the inconsistencies in her version of
events.

        In addition, I note the ALJ seems to have been troubled by
the fact that plaintiff might be entitled to a veterans'
disability payment and a social security disability payment,
noting that "she has a strong secondary gain motivation in
seeking VA and Social Security disability payments."  There is no
hint in the record, however, that plaintiff was manipulating the
system or making any claim that was not appropriate if it were
supported by substantial evidence.  In addition, the ALJ appears
to have ignored the VA disability determination not just because
social security disability standards are different but because
the ALJ determined the evidence did not support the VA's
disability determination in the first instance.

21- OPINION AND ORDER

The ALJ also emphasized the perceived incongruity between plaintiff's alleged PTSD and her activities of daily living, including her interest in music, taking care of animals at the ranch, working out at a gym, and "taking care of everyone else." For example, the ALJ noted with approval, consulting psychologist Dr. Bates-Smith's observation that plaintiff was able to tolerate "incidental contact" with people at the gym.  I find the ALJ's concern with plaintiff's daily activities, however, is misplaced. The commissioner's own consulting doctors agree plaintiff has at least moderate limitations interacting with supervisors and employees.  That she might be able to perform physical tasks with limited supervision by others and without the need to get along, tolerate, and/or cooperate with supervisors and co-workers in an employment setting does not vitiate the psychological difficulties she would have in maintaining regular employment.

Accordingly, on this record, I conclude the ALJ failed to give clear and convincing reasons for rejecting plaintiff's evidence, and indeed the VA's opinion, regarding the severity of her psychological impairments.

**Rejection of Medical Opinions of Plaintiff's Physicians**.

Plaintiff contends the ALJ failed to give sufficient reasons for rejecting the medical opinion of Dr. Foley, the psychiatric opinion of Dr. Kuttner, and the opinion of Dr. Wagener based on diagnostic testing requested by the ALJ.

In <u>Reddick v. Chater</u>, 157 F.3d 715, 7125 (9th Cir. 1998),
the Ninth Circuit laid out the weight to be given to the opinions
of treating doctors:

> The opinions of treating doctors should be
> given more weight than the opinions of
> doctors who do not treat the claimant. Where
> the treating doctor's opinion is not
> contradicted by another doctor, it may be
> rejected only for clear and convincing
> reasons supported by substantial evidence in
> the record.  Even if the treating doctor's
> opinion is contradicted by another doctor,
> the ALJ may not reject this opinion without
> providing specific and legitimate reasons
> supported by substantial evidence in the
> record.  This can be done by setting out a
> detailed and thorough summary of the facts
> and conflicting clinical evidence, stating
> his interpretation thereof, and making
> findings.  The ALJ must do more than offer
> his conclusions.  He must set forth his own
> interpretations and explain why they, rather
> than the doctors', are correct.

(Internal Citations Omitted).  In turn, "the opinions of
examining physicians are afforded more weight than those of non-
examining physicians."  <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th
Cir. 2007).

It is clear from the record as set forth above that the
weight the ALJ gave to the opinions of the medical providers was
based on the level to which they accepted plaintiff's claims
regarding sexual assaults and harassment while she was in the
service.  The ALJ's overall opinion is infused with her
determination that plaintiff did not tell the truth regarding her

military service and was seeking secondary gain.  For all the
reasons stated above, I have found that point of view to be
unjustified and not supported by the record.  As such, I find the
ALJ failed to give specific and legitimate reasons, supported by
substantial evidence to accept the disability opinions of
consulting physicians over those of plaintiff's numerous treating
and examining physicians and psychologists.  The medical opinions
of plaintiff's treating physicians, the VA examining physicians,
and Dr. Wagener, should have been given full weight.

In summary, I conclude plaintiff has met her burden of
proving she is disabled as a result of PTSD and dysthymia and
that she is entitled to disability benefits.

<u>**CONCLUSION**</u>

For all the reasons stated above, the court **REVERSES** the
final decision of the Commissioner and **REMANDS** this case for an
immediate award of benefits.

IT IS SO ORDERED.

DATED this 25 day of August, 2008.

 /s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge

24- OPINION AND ORDER